# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| YOGESHWAR, INC., <br><br> Plaintiff, <br><br> vs. <br><br> SOCIETY INSURANCE, et al., <br><br> Defendants. | No. C23-1005-LTS-KEM <br><br> **MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

This case is before me on two motions by defendant Society Insurance (Society): a motion (Doc. 29) for judgment on the pleadings and a motion (Doc. 30) for sanctions against plaintiff Yogeshwar, Inc. (Yogeshwar) and its counsel. Yogeshwar has filed resistances (Docs. 31 and 32) and Society has filed replies (Docs. 33 and 34). Oral argument is not necessary. *See* Local Rule 7(c).

## II. PROCEDURAL HISTORY

Yogeshwar commenced this action by filing a petition at law and jury demand in the Iowa District Court for Dubuque County on March 6, 2023. Doc. 2. On April 5, 2023, Society filed a notice (Doc. 1) of removal to this court based on diversity of citizenship jurisdiction. 28 U.S.C. § 1332. Society then filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Yogeshwar's lawsuit was filed after the contractual limitations period in the insurance policy (Policy) expired. Yogeshwar sought leave to amend its petition to assert facts suggesting that Society waived any contractual limitations period, additional facts to support allegations of fraudulent statements made by Society and an additional count of fraud against Society.

On May 19, 2023, Chief United States Magistrate Judge Kelly K.E. Mahoney entered an order (Doc. 21) granting the motion to amend.

The amended petition (Doc. 22) asserts the following claims against Society:

- Count I – Declaratory relief against Society
- Count II – Breach of the Society Policy
- Count III – Bad faith denial of coverage
- Count VI – Fraud

Doc. 22. Yogeshwar's claims arise from a derecho storm on August 10, 2020, that caused damage to its property in Peosta, Iowa (the Subject Property). Specifically, Yogeshwar alleges that Society breached the Policy by failing to indemnify Yogeshwar for losses sustained to the Subject Property. With regard to its bad faith and fraud claims, Yogeshwar alleges that Society's appraiser and/or the selected umpire made material misrepresentations to Yogeshwar's appraiser during the appraisal process that the appraisal could not consider Iowa's Line of Sight rule,[1] or interior damage, because Society would address these items after completion of the appraisal. Yogeshwar subsequently provided Society with an iTEL Roof Repair Analysis Report, showing that because the Subject Property's roof is a single roof, Yogeshwar could not simply replace a portion of the roof to repair the storm damage. Rather, the entire roof needed to be replaced.

---

[1] *See* Iowa Admin. Code r. 191-15.44(1)(b):

> When a loss requires replacement of items and the replaced items do not match in quality, color or size, the insurer shall replace as much of the item as is necessary to result in a reasonably uniform appearance within the same line of sight. This subrule applies to interior and exterior losses. Exceptions may be made on a case-by-case basis. The insured shall not bear any cost over the applicable deductible, if any.

Yogeshwar also requested that Society make a coverage determination or "adjust" the interior water damage and apply the Line of Sight rule to the claim. In a letter dated July 29, 2022, Yogeshwar alleges that Society wrote:

> both appraisers and umpire agreed that the interior damage to the insured property was the result of prior damage to the insured roof and not attributable to the alleged loss . . . [and] both appraisers and the umpire agreed that no consideration would be given for the Line of Sight Rule due to the fact that at the time of the alleged loss the insured property had at least three different color shingles on its roof.[2]

Doc. 22 at ¶ 32. Yogeshwar contends this letter invited further discussion and negotiation of the claim and did not mention any contractual limitations period. According to Yogeshwar, because the parties failed to agree on a settlement and there was an ongoing dispute regarding statements and representations made during the appraisal, Society waived any contractual limitation period. Yogeshwar sent a letter on August 10, 2022, reserving its rights under the Policy to receive recoverable depreciation under the Policy once the claim was resolved. Society did not respond.

## III. DISCUSSION

### A. *Motion for Sanctions*

Society asserts that Yogeshwar made the following false allegation in its amended petition and in reply to Society's resistance to Yogeshwar's motion to amend: "Yogeshwar first learned of the false statements of material fact on or about July 29, 2022 when it received a letter on or about that date from Society regarding such matters." Doc. 22 at ¶ 61; Doc. 18-1 at 13. In support of its claim that Yogeshwar's statement is false, Society cites a letter dated May 16, 2022, in which counsel for Yogeshwar wrote Society:

---

[2] Yogeshwar asserts that it "first learned of the false statements of material fact on or about July 29, 2022, when it received a letter on or about that date from Society regarding such matters." *Id.* at ¶ 61. This allegation is the basis of Society's motion for sanctions.

> Further, during the recent appraisal, Society Insurance's appraiser indicated to the Insured's appraiser – unbeknownst to the Insured – the appraisal reports cannot include interior damage because such damage was purportedly not mentioned by the original adjuster. Therefore, Society Insurance's appraiser and/or adjuster provided fraudulent misrepresentations during the appraisal process regarding the interior water damage issue.

Doc. 30-2 at 2. The letter also enclosed the iTEL Roof Repair Analysis Report and referenced the Line of Sight rule, arguing that Society was required to pay for the entire roof to be replaced. *Id.*

Society argues that Yogeshwar's allegation[3] does not have evidentiary support and was prejudicial to Society because the court relied on it in ruling on the motion to amend. *See* Doc. 21 at 4-6. It seeks dismissal of all counts against Society and attorney fees for litigating the present motion, answering the amended petition and litigating any other dispositive or non-dispositive motion which may be pending. In response, Yogeshwar states when it sent the May 16, 2022, letter, Yogeshwar suspected that Society's appraiser had made false or mistaken statements of material fact during the December 2021 appraisal, but its suspicion was unsubstantiated until it received Society's July 29, 2022, letter. Yogeshwar contends its May 16, 2022, letter was an attempt to reasonably inquire about the potential fraudulent misrepresentations and to obtain Society's position as to the outstanding disputed issues. Yogeshwar asserts that Society's July 29, 2022, letter was the first time Society expressed to Yogeshwar that:

---

[3] In its motion, Society suggests that Yogeshwar made an additional misrepresentation in its amended petition by stating that Society "has refused and continues to refuse to provide any coverage determination for the interior water damage . . . ." Doc. 18-1 at 5-6; Doc. 22 at 5-6. Society cites numerous pre-appraisal communications in which Society stated it was denying coverage, some of which specifically addressed interior water damage. It also cites Yogeshwar's May 16, 2022, letter in which counsel acknowledged Society had denied coverage as to the interior damage. However, Society did not address this misrepresentation in the argument section of its brief, suggesting it is seeking sanctions only with regard to the statement that Yogeshwar first learned of the false statement of material fact on or about July 29, 2022. As such, that is the only statement I will consider as Society's basis for sanctions.

4

(a) it disputed the statements made by Society's appraiser to Yogeshwar's appraiser that the appraisal report could not include an award for the interior damage;

(b) both appraisers and umpire agreed that the interior damage to the insured property was the result of prior damage to the insured roof and not attributable to the alleged loss;

(c) both appraisers and the umpire agreed that no consideration would be given for the Line of Sight Rule due to the fact that at the time of the alleged loss the insured property had at least three different color shingles on its roof; and

(d) the December 2021 appraisal award fully compensated the insured for any alleged loss related to the August 10, 2020, derecho.

Doc. 31 at 7. Yogeshwar asserts that when it sent the May 16, 2022, letter, it had insufficient information to plead in good faith a claim of fraud or mistake against Society.

Federal Rule of Civil Procedure 11(b) provides in relevant part:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

. . . .

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b). The court may impose sanctions for a violation of Rule 11. *See* Fed. R. Civ. P. 11(c)(1). Having considered the parties' arguments, I find that Yogeshwar's statement that it "first learned of the false statements of material fact on or about July 29, 2022 when it received a letter on or about that date from Society regarding such matters" does not warrant any sanction under Rule 11. Yogeshwar has plausibly explained that it had an unsubstantiated suspicion when it sent the May 16, 2022, letter, which references only statements by Society's appraiser concerning the interior damage

5

issue. That letter made no accusations regarding statements made by Society's appraiser concerning the Line of Sight rule, but nonetheless, explained Yogeshwar's position on the issue. It appears the next correspondence from Society was the July 29, 2022, letter, in which it stated:

> both appraisers and umpire agreed that the interior damage to the insured property was the result of prior damage to the insured roof and not attributable to the alleged loss . . . [and] both appraisers and the umpire agreed that no consideration would be given for the Line of Sight Rule due to the fact that at the time of the alleged loss the insured property had at least three different color shingles on its roof.

Doc. 22 at ¶ 32.

While Yogeshwar could have been more precise by explaining that it first "confirmed its suspicion" (versus "learned") that Society's appraiser had made false statements when it received Society's July 29, 2022, letter, its statement as written does not come close to constituting sanctionable conduct. Indeed, the July 29, 2022, letter appears to be the first time Yogeshwar did learn of false statements related to application of the Line of Sight rule, as Yogeshwar made no allegations of false misrepresentations by Society's appraiser and/or the umpire in that respect in its May 16, 2022, letter. Society's motion for sanctions is denied.

### B. *Motion for Judgment on the Pleadings*

Society argues it is entitled to judgment on the pleadings because (1) all claims against it are barred by the contractual limitations period and (2) even if the claims were not time-barred, the amended petition does not set forth sufficient facts to support each claim. In response, Yogeshwar argues that Society changed its coverage position after the appraisal and failed to communicate that it would not consider any additional coverage (particularly with regard to interior damage and application of the Line of Sight rule based on the iTEL report) until July 29, 2022, approximately two weeks prior to the expiration of the contractual limitations period. Yogeshwar contends that when the

6

pleaded facts are viewed in the light most favorable to Yogeshwar, Society waived the contractual limitations period. Yogeshwar further argues it has adequately pleaded its claims and, at most, Society has raised factual disputes, making judgment on the pleadings inappropriate.

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In evaluating a motion under Rule 12(c), the court applies the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). Federal Rule of Civil Procedure 8(a) provides that to state a claim for relief, a pleading must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a). The Supreme Court has interpreted this rule to mean that a complaint must contain sufficient factual matter, that accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 667-78 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* "[T]he complaint must say enough to give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." *Tellabs, Inc. v. Makor Issues & Rights, LTD.*, 551 U.S. 308, 319 (2007).

7

### *1. Contractual Limitations Period*

Society argues that Yogeshwar's claims are barred by the two-year contractual limitations period because (1) each claim is "on the Policy" and (2) there was no waiver of the contractual limitations period. Yogeshwar does not dispute that its claims are on the Policy but argues that, based on the facts pleaded in the amended petition, and giving all appropriate inferences to Yogeshwar, a reasonable factfinder could conclude that Society waived the contractual limitations period.

The amended petition alleges that the Policy was in effect from July 25, 2020, through July 25, 2021. Doc. 22 at ¶ 7. The Subject Property was damaged by the August 10, 2020, derecho. *Id.* at ¶ 12. After Society initially denied Yogeshwar's claim, the parties engaged in the appraisal process outlined in the Policy. Society selected Paul Strombeck as its appraiser and Yogeshwar selected Brad Roberts. *Id.* at ¶¶ 16-17. Strombeck provided a list of potential umpires and Roberts agreed to William Marske as an umpire for the appraisal. *Id.* at ¶ 18.

During the inspection of the property by the appraisal panel, Yogeshwar asserts Strombeck made one or more false or mistaken statements of material fact to Roberts, "being that the appraisers could not include any interior damage in their appraisal estimate because it was not mentioned by the original Society adjusters and the appraisers could not readjust the Society Claim; rather, Society would address the interior damage separate from the appraisal." *Id.* at ¶ 20. Yogeshwar alleges Roberts relied on the false or mistaken statement of material fact and did not include any interior damage in his appraisal estimate. *Id.* at 21. Consequently, Yogeshwar asserts that an appraisal award was entered without any consideration of interior damage. *Id.* at ¶ 22. Yogeshwar asserts that Strombeck and/or Marske made an additional false or mistaken statement of material fact to Roberts, "being that the appraisal panel could not include replacement of the entire roof in the appraisal estimate under Chapter 191, Section 15.44(1)(b) of the Iowa Administrative Code ("Line of Sight Rule");" and that Society would consider application of that rule after completion of the appraisal. *Id.* at ¶ 24. Roberts relied on

8

this representation and did not include replacement of the entire roof in his appraisal estimate and the appraisal award was entered without consideration or application of the Line of Sight Rule. *Id.* at ¶¶ 25-26.

Yogeshwar then provided Society with an iTEL Roof Repair Analysis Report, showing that because the Subject Property's roof is a single roof, it could not replace only the front slopes to properly repair the damage but would need to replace the entire roof. *Id.* at ¶ 27. Yogeshwar requested that Society consider this report, apply the Line of Sight Rule and also make a coverage determination or "adjust" the interior water damage. *Id.* at ¶ 28.

> In a July 29, 2022, letter, Society stated:
>
> both appraisers and umpire agreed that the interior damage to the insured property was the result of prior damage to the insured roof and not attributable to the alleged loss . . . [and] both appraisers and the umpire agreed that no consideration would be given for the Line of Sight Rule due to the fact that at the time of the alleged loss the insured property had at least three different color shingles on its roof.

*Id.* at ¶ 32. Yogeshwar states this was the first time it learned of the false statements of material fact. *Id.* at ¶ 61. It also interpreted the letter to invite further discussion and negotiation of the claim and notes it failed to notify Yogeshwar that Society intended to enforce any contractual limitations period. *Id.* at ¶¶ 34-35. Based on this letter, the parties' failure to settle the claim and the ongoing dispute concerning statements made during the appraisal, Yogeshwar asserts it understood Society intended to waive any contractual limitations period and would continue to negotiate the claim. *Id.* at ¶ 36.

Yogeshwar responded to the July 29, 2022, letter with a letter dated August 10, 2022, reserving its rights under the Policy to receive recoverable depreciation under the Policy once the claim was resolved. *Id.* at ¶ 37. Yogeshwar alleges Society did not respond to this letter by informing Yogeshwar it would be enforcing the contractual limitations period. This further led Yogeshwar to believe Society intended to waive any contractual limitations period. *Id.* at ¶¶ 38-39.

Society relied on the contractual limitations period in resisting Yogeshwar's motion to amend its complaint. In analyzing the issue, Judge Mahoney relied on *Scheetz v. IMT Ins. Co.*, 324 N.W.2d 302 (Iowa 1982), in which the Iowa Supreme Court recognized waiver principles apply to time limitations in insurance contracts, noting:

> Waiver can be shown by the affirmative acts of a party, or can be inferred from conduct that supports the conclusion waiver was intended. When the waiver is implied, intent is inferred from the facts and circumstances constituting the waiver. The issue of waiver is generally one of fact for the jury, in particular where acts and conduct are relied upon as the basis for the waiver. When the evidence is undisputed, however, the issue is one of law for the court.

*Id.* at 304 (citations omitted). In *Scheetz*, Judge Mahoney noted the court found waiver of the contractual limitations period because the insurer had "carried the [settlement] negotiations through the end of the twelve-month period," and sent a letter one day before the expiration of the period raising its previous offer from $5,000 to $5,500. *Id.* at 303, 305. Judge Mahoney reasoned:

> Unlike in *Scheetz*, Society Insurance argues that its letter signaled an end to negotiations, rather than their continuation. But the Iowa Supreme Court has recognized that the factfinder may find waiver "if an unreasonably short time for bringing suit remains out of the prescribed period after the insurer has ceased to hold out inducements such as to delay filing of the action." In *Brunner* [*v. United Fire & Cas. Co.*, 338 N.W.2d 151, 152 (Iowa 1983)], the court held that whether the insurance company waived the one-year contractual time limitation was an issue of fact for the jury 'because only six weeks of the one-year period remained when liability was denied.' Here, Yogeshwar alleges that Society Insurance did not inform it of its denial of interior damage or the line-of-sight rule until less than two weeks remained to file a lawsuit under the contractual time limitation. In addition, Society Insurance's letter concluded with an offer to discuss the matter further. Although the alleged facts here do not demonstrate waiver as strongly as in *Scheetz*, Society Insurance cites no cases showing Yogeshwar's amended allegations necessarily cannot withstand a motion to dismiss.

Doc. 21 at 6.

10

I agree with this analysis as it applies to Society's motion for judgment on the pleadings. On a motion under Rule 12(c), I must accept the factual allegations in the complaint as true and draw all reasonable inferences in Yogeshwar's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). After the appraisal, Society purportedly did not address interior damage or application of the Line of Sight rule until July 29, 2022, at which point Society stated its position on those issues for the first time. Doc. 26-8. As Judge Mahoney explained, a jury could conclude that Society waived the contractual limitations period, as it did not inform Yogeshwar of its denial of interior damage or use of the Line of Sight rule until less than two weeks remained within the contractual limitations period. It also invited further discussion and did not mention the contractual limitations period or its intent to enforce it. Because I must draw all reasonable inferences in Yogeshwar's favor, I conclude that Society is not entitled to judgment on the pleadings based on the Policy's contractual limitations period.

### 2. *Has Yogeshwar Sufficiently Pleaded Its Claims?*
#### a. *Count II – Breach of Contract*

Society argues Yogeshwar has not alleged that it performed its own obligations under the Policy and that Yogeshwar did not, in fact, comply with the requirement that the insured must, "[a]t [Society's] request, give [it] complete inventories of the damaged and undamaged property" including "quantities, costs, values and the amount of loss claimed." Doc. 11-3 at 29. Society asserts that after determining there were areas of the roof that had been patched before the alleged date of loss, it requested that Yogeshwar provide a description of the areas and invoices relative to patches made after August 10, 2020. Yogeshwar never provided this information, which impacted Society's ability to investigate and settle the claim.

Yogeshwar argues it is not required to plead facts to support that it complied with each and every obligation in the Policy. Yogeshwar notes that it did allege that it provided Society prompt notice of the storm damage and invoked the appraisal process under the

11

Policy. Yogeshwar contends Society has merely raised a factual dispute as to one of the elements of a breach of contract claim, making a judgment on the pleadings inappropriate.

To prevail on a breach of contract claim under Iowa law,[4] a plaintiff must prove:

> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that [plaintiff] has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998) (citing *Iowa-Illinois Gas & Elec. Co. v. Black & Veatch*, 497 N.W.2d 821, 825 (Iowa 1993)). A party breaches a contract when, without legal excuse, the party fails to perform any promise that forms a whole or a part of the contract. *Id.* (citing *Magnusson Agency v. Public Entity Nat'l Co. Midwest*, 560 N.W.2d 20, 27 (Iowa 1997)).

The party claiming entitlement to coverage under an insurance policy must prove compliance with its terms. *Am. Guar. & Liab. Ins. Co. v. Chandler Mfg. Co.*, 467 N.W.2d 226, 228 (Iowa 1991); *Bruns v. Hartford Accident & Indem. Co.*, 407 N.W.2d 576, 579 (Iowa 1987); *Henschel v. Hawkeye–Security Ins. Co.*, 178 N.W.2d 409, 415 (Iowa 1970); *Henderson v. Hawkeye–Security Co.*, 106 N.W.2d 86, 91 (Iowa 1960). Federal Rule of Civil Procedure 9(c) provides: "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."

Society relies on specific instances in which it contends Yogeshwar did not comply with its obligations under the Policy. *See* Doc. 29-1 at 14 (alleging Yogeshwar did not cooperate with Society in the investigation or settlement of the claim and did not give Society complete inventories of the damaged and undamaged property). This is an

---

[4] Because this is a diversity action, I must apply the substantive law, including choice-of-law rules, of the forum state. *Bank of Am., N.A. v. JB Hanna, LLC*, 766 F.3d 841, 851-52 (8th Cir. 2014). The parties have proceeded under the assumption that Iowa law applies to Yogeshwar's claims. I will do the same.

inappropriate consideration under Rule 12(c). To the extent Society intends to defend the breach of the contract claim by arguing there were obligations that Yogeshwar failed to perform that would excuse Society's own performance, those arguments are more appropriately presented via a motion for summary judgment. Society's motion for judgment on the pleadings on the breach of contract claim (Count II) is denied.

### b. Count III – Bad Faith

With regard to Yogeshwar's bad faith claim, Society argues (1) there were reasonable bases for the coverage decisions and (2) Yogeshwar has not alleged Society knew or had reason to know there was no reasonable basis to deny its claim. Yogeshwar responds that it has alleged that Society and/or its representatives made one or more false statements of material fact with the intent to deceive Yogeshwar and/or its representatives and that Society was aware of the fraudulent statements upon which it was denying additional coverage. It contends these fraudulent statements cannot be a reasonable basis for denying coverage.

The elements of a first party bad faith insurance claim under Iowa law are: "(1) that the insurer had no reasonable basis for denying benefits under the policy and, (2) the insurer knew, or had reason to know, that its denial was without basis." *Thorton v. American Interstate Insurance Company*, 897 N.W.2d 445, 461-62 (Iowa 2017) (quoting *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 657 (Iowa 2002)). The first element is objective and the second element is subjective. *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005). With regard to the objective element, Society relies on materials outside the pleadings to argue that it had a reasonable basis for denying coverage. Specifically, it relies on inspections it performed following Yogeshwar's insurance claim as well as the appraisal award to argue there were reasonable bases to deny coverage. *See* Doc. 29-1 at 16 (citing Docs. 26-1, 26-3). Yogeshwar's bad faith claim is based primarily on alleged false statements of material fact by Society or its representatives that affected the appraisal process and therefore, did

13

not constitute a reasonable basis to deny coverage for interior damage or the roof based on the Line of Sight rule. Society does not address this aspect of Yogeshwar's bad faith claim. Yogeshwar has sufficiently pleaded the objective element of a bad faith claim.

With regard to the subjective element, Yogeshwar asserts "Society and/or its representatives made one or more false statements of material fact, with the intent to deceive Yogeshwar and/or its representatives, which Yogeshwar and/or its representatives reasonably relied on to Yogeshwar's detriment." Doc. 22 at ¶ 42. In its factual allegations, Yogeshwar asserts that the false statements came from Society's appraiser, Paul Strombeck, with regard to the inclusion of interior damage and from "Strombeck and/or William Marske" with regard to whether the appraisal could include replacement of the entire roof in accordance with the Line of Sight rule. *Id.* at ¶¶ 20, 24. Because Yogeshwar alleges that these statements came from Society and/or its representatives, and that the statements were made with the intent to deceive Yogeshwar, this satisfies the second element that the insurer knew, or had reason to know, that its denial was without basis. Society's motion for judgment on the pleadings as to Count III is denied.

### c. *Count VI – Fraud*

Society argues Yogeshwar's claim of fraud (Count VI) does not meet Rule 9(b)'s heightened pleading standard and also fails to state a claim under Rule 8. Specifically, Society argues Yogeshwar has failed to sufficiently identify "who" from Society made the alleged misrepresentations for two reasons. First, Yogeshwar does not precisely identify "who" by naming Strombeck and/or Marske as the persons who made the alleged misrepresentation regarding application of the Line of Sight rule. Second, Yogeshwar fails to identify who from *Society* made the misrepresentations, noting that Yogeshwar acknowledges that Strombeck was a disinterested appraiser. To the extent Yogeshwar relies on the statements in the July 29, 2022, letter as false statements by Society, Society argues Yogeshwar has not alleged what was misrepresented, what about the

14

misrepresentation was material, that Society knew the representation was false, that Society intended to deceive Yogeshwar, that Yogeshwar acted in justifiable reliance on the truth of the representation or that the justifiable reliance resulted in any damages. Finally, Society argues that any allegation that Society made a false representation to defendant West Bend Insurance (West Bend) is not actionable by Yogeshwar.

Yogeshwar argues it has adequately pleaded fraud against Society. It notes that as an entity, Society can act only through its representatives and that Society has not provided any legal authority that the actions of its selected appraiser cannot be attributed to Society. With regard to the alleged false statements to West Bend, Yogeshwar requests that it be allowed to amend its petition to recast its claim as an intentional interference with contract or potential business advantage if the court is inclined to dismiss it on the grounds raised by Society.

Under Iowa law, fraud requires proof that: "(1) the defendant made a representation to the plaintiff, (2) the representation was false, (3) the representation was material, (4) the defendant knew the representation was false, (5) the defendant intended to deceive the plaintiff, (6) the plaintiff acted in justifiable reliance on the truth of the representation . . . , (7) the representation was a proximate cause of [the] plaintiff's damages, and (8) the amount of damages." *Dier v. Peters*, 815 N.W.2d 1, 7 (Iowa 2012). Federal Rule of Civil Procedure 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This means a plaintiff must identify the "who, what, when, where, and how: the first paragraph of any newspaper story." *See Great Plains Trust Co. v. Union Pac. R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.), *cert. denied*, 498 U.S. 941 (1990)). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908,

15

917 (8th Cir. 2007) (quoting *Commercial Property Invs. Inc. v. Quality Inns Int'l Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)).

Society made similar arguments in challenging Yogeshwar's motion to amend. Judge Mahoney concluded that Yogeshwar's allegations provided sufficient notice of its fraud claim under Rule 9(b)'s heightened pleading standard. *See* Doc. 21 at 3. Society's complaints regarding "who" made the alleged fraudulent statements are insufficient to enter judgment in favor of Society at this stage. The fact that Yogeshwar identifies Strombeck and/or Marske as the individual(s) who made the alleged fraudulent statements, satisfies the particularity requirement as it provides Society with sufficient notice of Yogeshwar's claim. Society has not cited any case law for the proposition that the identification of two possible individuals fails to meet Rule 9(b)'s standard. With regard to whether the actions of either of these individuals can be attributed to Society is an issue better reserved for summary judgment. Society has not provided any authority demonstrating that a fraudulent statement from either individual could not be attributed to Society as a matter of law under the circumstances. Society's motion as to Count VI is denied to the extent it argues Yogeshwar has failed to identify "who" from Society is alleged to have made the fraudulent statements.

Yogeshwar does not appear to rely on any statements in the July 29, 2022, letter as a separate basis for its fraud claim. *See* Doc. 22 at ¶¶ 60-63 (alleging that it first learned of the false statements of material fact on or about July 29, 2022 when it received a letter on or about that date from Society regarding such matters). Aside from the alleged false statements identified in paragraphs 20 and 24, the only other false statement Yogeshwar identifies is in paragraph 63:

> Additionally, Society made one or more false statements of material fact to West Bend, being that the appraisal panel in the Society Claim considered damage caused by the December 15, 2021 weather event and Society provided coverage for storm damage to the Subject Property from the December 15, 2021 weather event.

16

*Id.* at ¶ 63. This basis for fraud fails the first element – that defendant made a representation to the *plaintiff*. As such, Society's motion as to Count VI is granted to the extent it is based on statements by Society to West Bend. It is denied on all other bases.

Yogeshwar seeks leave to amend its petition to include a separate claim of intentional interference with contract or potential business advantage based on this alleged false statement from Society to West Bend. Society argues that Iowa courts disfavor attempts to recast causes of action which are otherwise not actionable as a matter of law but offers no explanation as to why Yogeshwar's proposed amendment would fail as a matter of law. Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that "[t]he court should freely give leave when justice so requires." While Yogeshwar has already had the opportunity to amend its state court petition once, its fraud claim was added with that amendment. As such, Yogeshwar has not yet had the opportunity to amend that claim. As such, I find it appropriate to permit Yogeshwar to amend the complaint to add a cause of action that is better suited for its allegations regarding Society's alleged misrepresentation to West Bend.

### IV. CONCLUSION

For the reasons set forth herein:

1. Society's motion (Doc. 30) for sanctions is **denied**.

2. Society's motion (Doc. 29) for judgment on the pleadings is **granted in part and denied in part**. It is **granted** to the extent Count VI is based on statements by Society to West Bend. It is **denied** on all other bases.

3. Yogeshwar may file an amended complaint, if it so chooses, to add a new claim addressing the alleged misrepresentation by Society to West Bend. Any such amended pleading must be filed within **14 days** of this order.

17

**IT IS SO ORDERED.**

**DATED** this 15th day of August, 2023.

_____
Leonard T. Strand, Chief Judge