# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

YOGESHWAR, INC.,

            Plaintiff,

vs.

SOCIETY INSURANCE, et al.,

            Defendants.

No.  C23-1005-LTS-KEM

**MEMORANDUM
OPINION AND ORDER**

## I.     INTRODUCTION

This case is before me on a motion (Doc. 42) for summary judgment by defendant Society Insurance (Society), a motion (Doc. 43) for summary judgment by defendant West Bend Mutual Insurance Company (West Bend) and a motion (Doc. 44) for partial summary judgment by plaintiff Yogeshwar, Inc.   Yogeshwar has filed resistances to defendants' motions, *see* Docs. 46 and 49, and Society has filed a resistance to Yogeshwar's motion. *See* Doc. 45.  The parties have also filed replies in support of their respective motions.  Docs. 50, 51 and 52.  Oral argument is not necessary.  *See* Local Rule 7(c).

## II.     PROCEDURAL HISTORY

Yogeshwar commenced this action by filing a petition at law and jury demand in the Iowa District Court for Dubuque County on March 6, 2023.  Doc. 2.  On April 5, 2023, Society filed a notice (Doc. 1) of removal to this court based on diversity of citizenship jurisdiction.  28 U.S.C. § 1332.  In its second amended petition (Doc. 37), Yogeshwar alleges the following claims:

- Count I – Declaratory relief against Society
- Count II – Breach of the Society Policy

- Count III – Bad faith denial of coverage against Society
- Count IV – Breach of the West Bend Policy
- Count V – Bad faith denial of coverage against West Bend
- Count VI – Fraud against Society
- Count VII – Intentional interference with contract and prospective business advantage against Society

Trial is scheduled to begin September 16, 2024.

### III.   SUMMARY JUDGMENT STANDARDS

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475

2

U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996). On cross motions for summary judgment, the "court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A

3

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 (3d ed. 1998).

## IV.    RELEVANT FACTS

### A.    *Society's Motion for Summary Judgment and Yogeshwar's Motion for Partial Summary Judgment*

Yogeshwar purchased a hotel (the Property) in Peosta, Iowa, on or about July 24, 2019. Doc. 46-1 at 1. The Property was insured by a Society policy (the Policy) from July 25, 2020, to July 25, 2021. *Id.* at 2. The Policy has a contractual limitations period stating: "No one may bring a legal action against us under this insurance unless: . . .[t]he action is brought within 2 years after the date on which the direct physical loss or damage occurred." *Id.* at 3. On August 10, 2020, a derecho hit Iowa. The parties dispute whether the Property was outside of the geographic area affected by the derecho. *Id.* at 4; Doc. 45-1 at 1. Yogeshwar filed a claim with Society for roof damage with a date of loss of August 10, 2020.[1] Doc. 46-1 at 4-5l; Doc. 45-1 at 2.

Society adjuster Christi Stellingworth visited the Property and concluded there was no damage caused by the derecho. Yogeshwar notes that Stellingworth walked around the exterior of the property but did not go on the roof or inside the Property. Doc. 46-1 at 5. Greg Phillips of Tekton Forensics inspected the Property on two occasions on behalf of Society, but the parties dispute his conclusion. *Id.* Society maintains that Phillips found no causative hail or wind events for the claimed damage. Yogeshwar states that Phillips' report identifies hail and wind damage and noted shingle repairs in numerous areas of the roof. It also states his report erroneously states that there were no storm reports within the NCEI-Storm Event Database for August 10, 2020. *Id.* at 5-6. After the second inspection, Phillips concluded: "My opinions rendered within my September

---

[1] In September 2020, Yogeshwar reported interior damage. The parties dispute whether this was the first time Yogeshwar claimed such damage. Doc. 46-1 at 6-7.

1, 2020 report remain unchanged based on both my investigation completed on August 25, 2020, and my most recent investigation completed on June 15, 2021." *Id.* at 6.

On December 4, 2020, Society denied the claim via letter. *Id.* at 7. The letter states in part: "Society Insurance has investigated this loss and do not feel there were damages to the building from the August 10, 2020 storm . . . . Some interior water damage was reported but above this area of the water damage there was no roof damage or patch jobs according to our expert." Doc. 51-1 at 2.[2] Society maintains that it reiterated its denial in subsequent letters.[3] Doc. 46-1 at 7-9. As part of its investigation, Society requested Yogeshwar provide supporting documentation, such as repair invoices. *Id.* at 19. Yogeshwar admits that Society made this request, but notes that there is no documentation for some patchwork done to the roof after the derecho because Yogeshwar did not receive an invoice or receipt and paid the contractor in cash. *Id.*

On June 25, 2021, Yogeshwar requested appraisal pursuant to the Policy.[4] *Id.* at 9. Society appointed Paul Strombeck as independent appraiser and Yogeshwar appointed

---

[2] Yogeshwar admits receiving a letter from Society dated December 4, 2020, but denies receiving the December 4, 2020, letter cited by Society in its appendix and argues that the letter is inadmissible as lacking factual foundation. Doc. 51-1 at 2.

[3] Yogeshwar asserts that Society's evidence of those letters is inadmissible under Federal Rule of Evidence 901. *Id.*

[4] The Appraisal clause states:

> 2. Appraisal.
>
> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Brad Roberts. Strombeck nominated William Marske to serve as umpire and Roberts approved. *Id.* at 9-10. On December 16, 2021, the appraisal panel inspected the interior and exterior of the Property. *Id.*

While the parties agree the appraisers inspected the interior of the Property, Yogeshwar notes that the appraisal panel did not consider any of the interior damage in the appraisal because Strombeck informed Roberts the appraisal panel could not readjust the claim and it would be considered by Society separate and apart from the appraisal.[5] *Id.* at 11. Society maintains the appraisal panel reviewed the claimed interior damage and awarded $0. Doc. 45-1 at 7. Strombeck testified: "Due to the fact it was not on the date of loss, the appraisal panel unanimously agreed not to consider it in their award." Doc. 46-1 at 11. Yogeshwar disputes Strombeck's statement, noting that Roberts opined that certain interior damage was caused by the August 10, 2020, derecho and notes that

---

Each party will:

        a. Pay its chosen appraiser, and
        b. Bear the other expenses of the appraisal and umpire equally. If there is an appraisal, we will still retain our right to deny the claim.

Doc. 45-1 at 3.

[5] This is based on the following testimony from Roberts:

Q:     You testified multiple times that Mr. Strombeck informed you that the panel could not readjust the interior claim; correct?
A:     That is his exact words, yes.
Q:     But for Mr. Strombeck's statement that you could not readjust the interior claim, would you have agreed to the appraisal award as written currently?
A:     No.
Q:     And it was your opinion that certain interior damage was caused from the August 10, 2020 derecho?
A:     I felt that, yes.

Doc. 45-1 at 4-5.

Marske testified the interior damage was not included in the appraisal. *Id.* Marske testified that interior damage

> was never brought up as an item in dispute in the appraisal. There was never any documents supplied or estimates or frankly I didn't – it didn't appear that it was in this appraisal. It was never brought up as part of the appraisal, at least the appraisers to me that I recall.

Doc. 45-1 at 6.

The appraisal panel observed at least three different colors of shingles on the roof. Doc. 46-1 at 11. Yogeshwar notes this was due to multiple prior repairs from Yogeshwar mitigating its damages and notes all such shingles were on the slopes the appraisal panel agreed needed to be replaced. *Id.* at 11-12. The parties dispute whether the appraisal award included consideration of Iowa's line of sight rule.[6] Doc. 45-1 at 4. Yogeshwar cites the following deposition testimony from Roberts:

> Q:    In the appraisal panel discussions was there any discussion regarding supplements following the appraisal award?
>
> A:    I was told that we would have – that the contractor would have to take it up with the insurance company for supplementing the line of sight or the color matching of the shingles per slope and elevation.
>
> Q:    And who informed you of that?
>
> A:    I'm not for sure if it was Mr. Strombeck or Mr. Marske
>
> Q:    And is that the reason why you didn't push the line of sight rule in reaching the award?
>
> A:    I did push for it, but that's what I was told – it would have to be taken up with the contractor and the carrier. First appraisal, I – I didn't – I guess didn't know any better.
>
> . . . .

---

[6] *See* Iowa Admin. Code r. 191-15.44(1)(b).

Q:      - but for the statement that the line of sight could be or would be considered as a supplement after the appraisal award, would you have conceded to the appraisal award as written?

A:      Probably not.

*Id.* at 5. Marske testified that he could not specifically recall any discussion among the panel regarding the applicability of a line of sight rule. *Id.* at 6. The parties agree that Roberts submitted an ITEL Roof Repair Analysis Report, but Society notes the document did not refer to applicability of the line of sight rule or interior damage to the Property. Doc. 51-1 at 4-5.

The appraisal panel awarded replacement of the roof of the second story front slopes only. Doc. 45-1 at 6. The appraisal contemplates full replacement of those two slopes of the roof for an actual cash value (ACV) of $15,674.50 and replacement cost value (RCV) of $23,425.55. Doc. 46-1 at 12. The Policy requires Society to pay the ACV, less the deductible. It would pay depreciation (the difference between the ACV and RCV) once the work is completed. On December 27, 2021, Society issued a check in the amount of $15,674.50 to Yogeshwar and a replacement check in the same amount on March 1, 2022, which Yogeshwar then deposited. *Id.* at 12-13. Yogeshwar denies these statements, arguing they are not supported by admissible evidence. *Id.*

Society provided documents to West Bend[7] related to the August 10, 2020, claim. *Id.* at 13. Yogeshwar states that Strombeck informed West Bend that all damages to the Property were addressed during the December 16, 2021, appraisal panel inspection even though Strombeck informed Society: "The appraisal panel agreed that none of the new damage or damage that existed prior to the August 10, 2020, date of loss would be considered in our evaluation." *Id.* at 14. Society notes any discrepancy is immaterial

---

[7] The Property was insured by West Bend beginning in 2021. A weather event occurred on December 15, 2021 (the day before the appraisal panel viewed the property), for which Yogeshwar submitted a claim to West Bend.

because the appraisal award fully compensated the replacement of the only slopes that were damaged by the December 15, 2021, weather event. *See* Doc. 50-1 at 13. West Bend concluded that the damage from the December 15, 2021, weather event was encompassed by the Society appraisal and had already been paid. *Id.*

The parties disagree on when Yogeshwar learned of disputed issues with the Society claim. Society relies on a March 15, 2022, email in which Yogeshwar's counsel recognized "the dispute is over the interior repair work" and that she had "reviewed the denial letter stating that interior work is an exclusion to the Policy." Doc. 46-1 at 14-15. On May 16, 2022, Yogeshwar's counsel issued a letter stating "I understand Society Insurance has improperly denied coverage as to the interior damage . . . ." *Id.* The letter also demanded that Society "[a]djust the interior damage proximately caused by the 8/10/2020 derecho. . . ." and that Society pay for the replacement of the entire roof pursuant to the line of sight rule. *Id.* at 15; Doc. 50-1 at 1. The letter accused Society's appraiser of making a fraudulent misrepresentation during the appraisal and that Society's denial of coverage was made in bad faith. Doc. 46-1 at 15-16. Society notes that Yogeshwar never provided any documentation in support of its line of sight request. Doc. 45-1 at 7.

On July 29, 2022, Society responded that the interior damage and line of sight rule were determined through the appraisal process and ended: "Please do not hesitate to contact me if you wish to discuss this matter further." Doc. 50-1 at 1; Doc. 46-3 at 20. The parties dispute when Society communicated its decision on interior damage and application of the line of sight rule. Yogeshwar maintains it was not until the July 29, 2022, letter. Society maintains that it denied the claims on December 4, 2020, and reiterated its denial position in letters dated April 27, 2021, and June 22, 2021. Doc. 50-1 at 2. It notes that Yogeshwar acknowledged this by retaining counsel and issuing correspondence to Society in March and May 2022. *Id.*

The parties dispute whether Yogeshwar represented in an insurance application that the roof was installed in 2019. Yogeshwar asserts there is no admissible evidence

9

demonstrating Yogeshwar ever made any representation to Society regarding the age of the roof and the application lacks factual foundation to establish what the document is, who created it and how it came into Society's possession. Yogeshwar contends the evidence cited in support by Society lacks factual foundation and is inadmissible. Society relies on Strombeck's testimony that the roof was original, approximately 20 years old and at the end of its useful lifetime. Doc. 46-1 at 17.

The parties dispute whether Yogeshwar's owner, Mihir (Mike) Patel, hired David Ramsey to photograph the hotel shortly after purchasing the property in August 2019. *Id.* Society maintains that Ramsey's photos show that Yogeshwar's claims of interior damage existed in August 2019 and that photographs taken in or around 2015 reflect similar interior damage. *Id.* at 18. It also relies on Strombeck's testimony that he reviewed photographs from Google Earth showing wind and hail damage and repair patches predating August 10, 2020. Yogeshwar denies this and argues the evidence cited by Society is inadmissible.

**B.  *West Bend's Motion for Summary Judgment***

Yogeshwar supported its Society claim based on the August 10, 2020, derecho with (1) a roof repair estimate from Storm Recovery Roofing & Siding, LLC (Storm Recovery) dated April 5, 2021, in the amount of $222,622.93 for replacement of the entire roof and (2) an interior lobby and hotel room repair estimate from Kingdom Warriors Construction LLC, dated August 17, 2021, in the amount of $95,135. Doc. 49-1 at 2. Yogeshwar and Society disputed the amount of loss sustained as a result of the derecho and proceeded to appraisal to resolve the dispute.[8] *Id.* The appraisal panel inspected the Property on December 16, 2021, the day after a December 15, 2021, windstorm that is the subject of Yogeshwar's claim with West Bend. *Id.* Yogeshwar

---

[8] Yogeshwar notes that the appraisal did not resolve all issues with its claim. Doc. 49-1 at 2.

notes that the Society appraisal panel agreed that no new damage would be considered in the appraisal of the Society claim. *Id.* at 3. On December 24, 2021, the Society appraisal panel issued an appraisal award of $23,425.55 RCV/$15,674.50 ACV, covering replacement of the "2nd Story Front Slopes Only." *Id.* Society paid the ACV portion minus Yogeshwar's deductible. *Id.*

West Bend issued a Commercial Lines insurance policy (the West Bend Policy) on the Property, as the sole insurer, on or about July 25, 2021. *Id.* The West Bend Policy includes property coverage for ACV only[9] for the roof for wind/hail damage and has a $10,000 wind/hail deductible. *Id.* at 4. It provides for payment of a loss only in excess of the deductible. *Id.* The West Bend Policy also requires that any claimed loss or damage to have occurred during the policy period. *Id.* at 4-5. If the insured intentionally conceals or misrepresents a material fact concerning a claim, coverage is void pursuant to the West Bend Policy. *Id.* at 5. Some of the insured's duties in the event of loss are to send the insurer a signed, sworn proof of loss containing information requested by the insurer to investigate the claim and cooperate with the insurer in the investigation or settlement of the claim. *Id.*

On December 29, 2021, Yogeshwar submitted a claim to West Bend asserting roof damage and interior water damage as a result of a windstorm on December 15, 2021. *Id.* at 6. West Bend conducted a building inspection on March 28, 2022, during which Yogeshwar's contractor, Alejandro Mayorga of Storm Recovery was present.[10] *Id.* During the inspection, West Bend's representative, Matt Davis, observed multiple previously patched, repaired and/or replaced areas of the roof. *Id.* at 7. Historical aerial

---

[9] The parties agree that an ACV policy does not preclude an insured from receiving coverage for an entire roof if the roof needs to be replaced. Doc. 52-1 at 14.

[10] Storm Recovery evaluated the roof after the August 10, 2020, derecho and after the December 15, 2021, weather event, noting new damage after December 15, 2021. It concluded that the Property required a full replacement of the roof to adequately remedy the storm damage from either event. Doc. 52-1 at 1-2, 4, 16.

photos established that these patches, repairs or replacements had been performed within the previous two years.[11] Davis determined there was some damage in the form of some missing and damaged shingles, a partially missing ridge cap and a piece of missing fascia. He concluded these items could be repaired.[12] *Id.* Specifically, Davis saw damage to slopes 1, 2, 5, 6 and 9, but found that damage from the December 15, 2021, weather event was limited to slope 2.[13] Doc. 52-1 at 5-6. Inside, he found some water damage around the chimney, but determined this was caused by flashing as there had been no wind damage around the chimney. Doc. 49-1 at 8. While he observed some water damage in some hotel rooms, he determined this was pre-existing because it was located beneath sections of the roof that had been previously repaired.[14] *Id.*

On April 5, 2022, Storm Recovery provided West Bend with an ITEL report concurring that the roof could not be repaired but needed to be replaced. Doc. 52-1 at 7. The ITEL report indicated that non-damaged shingles could be damaged by repairs and that the "Ridge cap damage affects adjacent slopes." *Id.* at 8, 16. Yogeshwar submits that removing the second story front slopes and ridge cap will necessarily cause irreparable damage to the adjoining second story back slopes of the Property. *Id.* at 15. It states a contractor will not be able to remove a single row of shingles on the adjoining second story back slopes without damaging the shingles on the row underneath it, which

---

[11] The parties dispute whether the current patches on the Property were installed after the weather events at issue and whether they are adequate to remedy the storm damage to the roof based on the age and condition of the current shingles on the roof. Doc. 52-1 at 7-8.

[12] Yogeshwar denies these statements, arguing they are not supported by admissible evidence. It argues the claim notes lack foundation and the "historical aerial photos" are inadmissible hearsay within hearsay. Doc. 49-1 at 7.

[13] The parties agree that the Society appraisal award encompassed slopes 1 and 2. Doc. 52-1 at 6.

[14] Yogeshwar denies statements regarding the interior damage as unsupported by admissible evidence. Specifically, it argues the claim notes lack foundation. It also denies that all interior water damage pre-existed the December 21, 2021, storm.

will have a domino effect in damaging shingles below each row. *Id.* at 15-16. West Bend denies this, citing the Society appraisal award. Doc. 43-3 at 30-33. Storm Recovery concluded that the roof required a full replacement to adequately remedy the storm damage from either the August 10, 2020, derecho or the December 15, 2021, weather event. *Id.* at 4. Mayorga's price estimate to replace the roof did not change from April 5, 2021, to November 10, 2022, when Yogeshwar submitted its Proof of Loss to West Bend. *Id.* at 5. Its Proof of Loss did not include any interior damage estimates. *Id.*

West Bend retained a roofing contractor, Davis Construction, for a second opinion. This contractor determined the roof damage was repairable.[15] Doc. 49-1 at 8. Davis Construction provided no documents, pictures or estimates to support its finding. Doc. 52-1 at 9. West Bend also searched the building's claim history and discovered the claim to Society based on the August 10, 2020, derecho. It learned that the claim went to appraisal and the appraisal panel conducted its inspection after the December 15, 2021, storm, awarding replacement of the roof's upper front slopes.[16] Doc. 49-1 at 9. The appraisal award was for full replacement of the "2nd Story Front Slopes Only." *Id.* The parties dispute whether this was also the portion of the roof damaged by the December 2021 storm. Matt Davis concluded the repairs for the December 2021 storm would cost $1,092.06.[17] *Id.* at 10. On April 14, 2022, he wrote to Patel explaining his findings and

---

[15] Yogeshwar denies this statement, arguing the claim notes and correspondence from Ryan Davis lack foundation. It also denies that the roof is repairable.

[16] Yogeshwar denies this statement, arguing the claim notes lack foundation and are inadmissible. It also states no evidence exists to show Society paid the RCV amount identified in the appraisal award.

[17] Yogeshwar denies this statement as lacking foundation and denies that the roof can be repaired.

the repair cost estimate and advised that because it was less than the policy deductible, West Bend would not issue a payment.[18] *Id.*; Doc. 52-1 at 12.

On April 18, 2022, Yogeshwar demanded that West Bend submit to appraisal. Doc. 49-1 at 11. West Bend denied the demand, citing the overlap in damages between the derecho and December 2021 windstorm. It reserved its rights under the West Bend Policy, stating that it would continue to investigate and requested that Yogeshwar provide a complete sworn proof of loss, supporting documentation and asked Yogeshwar to provide a recorded statement. *Id.*

On August 30, 2022, Yogeshwar's counsel sent a letter of representation to West Bend. *Id.* at 12. West Bend responded, providing counsel with a copy of the sworn proof of loss form and reiterated its request for a recorded statement. *Id.* On September 8, 2022, Patel provided his recorded statement. According to West Bend, Patel acknowledged the Society claim, but represented that Society had paid nothing on the claim. After advising that West Bend knew of the appraisal award, Patel stated if Society had paid anything, it was paid to Yogeshwar's contractor, Mayorga. Patel then stated Yogeshwar had actually received payment from Society but had not used any portion of the payment.[19]

On October 4, 2022, West Bend issued updated Reservation of Rights correspondence to Yogeshwar. *Id.* at 13. On November 10, 2022, Yogeshwar submitted a sworn proof of loss. *Id.* Within the sworn proof of loss, Yogeshwar represented it had sustained "wind and water damage" and claimed "$222,622.93, less amounts paid by Society" as a result of the December 2021 windstorm. *Id.* This is the exact damage

---

[18] Yogeshwar denies this statement arguing the claim notes and correspondence lack foundation and are inadmissible. It admits that West Bend denied the claim.

[19] Yogeshwar denies West Bend's summary of the recorded statement as lacking foundation. It states that during the recorded statement, Patel did not at first recall if it received a check from Society or West Bend but agreed to review its records and provide a copy of the check to West Bend later, which he did. Doc. 49-1 at 12-13; Doc. 52-1 at 10.

figure appearing on Yogeshwar's roofing contractor's estimate dated April 5, 2021, for cost of replacing the entire roof after the August 2020 derecho. *Id.* The parties dispute whether Yogeshwar provided West Bend all information requested of it regarding the Society claim. Doc. 52-1 at 9. The parties dispute whether West Bend ever requested any estimates from Yogeshwar to support Yogeshwar's proof of loss. *Id.* at 12.

On November 15, 2022, West Bend denied the claim, asserting the damage from the December 2021 storm had been addressed and covered under the Society claim. Doc. 49-1 at 14. Yogeshwar filed suit on March 6, 2023, alleging breach of contract and bad faith. *Id.*

## V. DISCUSSION

### A. Society's Motion for Summary Judgment[20]

Society seeks summary judgment on all of Yogeshwar's claims. It argues that the contractual limitations period in the Policy bars this lawsuit, and otherwise argues that Yogeshwar's claims fail as a matter of law on the undisputed facts or that its claims are not legally cognizable and unsupported.

### 1. The Contractual Limitations Period

The Policy contains the following contractual limitations period: "No one may bring a legal action against us under this insurance unless: . . . [t]he action is brought within 2 years after the date on which the direct physical loss or damage occurred." Doc. 42-3 at 103. It is undisputed that the claimed date of loss is August 10, 2020. Yogeshwar filed suit on March 6, 2023. Doc. 1-2. The issue is whether Society waived the contractual limitations period.

---

[20] There is some overlap between Society's motion for summary judgment and Yogeshwar's motion for partial summary judgment. As such, Section V(A)(2)(a) will also address Yogeshwar's motion for partial summary judgment.

Waiver is "the voluntary or intentional relinquishment of a known right." *Scheetz v. IMT Ins. Co.*, 324 N.W.2d 302, 304 (Iowa 1982) (quoting *Travelers Indem. Co. v. Fields*, 317 N.W.2d 176, 186 (Iowa 1982)).[21]  It can be shown by affirmative acts or inferred from conduct. *Id.*  "The issue of waiver is generally one of fact for the jury, in particular where acts and conduct are relied upon as the basis for the waiver." *Id.* (citing *Continental Casualty Co. v. G.R. Kinney Co.*, 140 N.W.2d 129, 130 (Iowa 1966)).

Yogeshwar argues Society waived the contractual limitations period because it did not state its position regarding interior damage or application of the line of sight rule until July 29, 2022 – 12 days before the contractual limitations period expired.  The court has twice rejected Society's efforts to dismiss the case based on application of the contractual limitations period.  *See* Docs. 21, 35 (explaining that a jury could conclude that Society waived the contractual limitations period by finding (1) did not inform Yogeshwar of its denial of interior damage or use of the line of sight rule until less than two weeks remained within the contractual limitations period and (2) invited further discussion and did not mention the contractual limitations period or its intent to enforce it).  Yogeshwar relies on the same evidence and reasoning of those decisions.  Specifically, it argues the undisputed evidence confirms its allegations that Society did not address interior damage or application of the line of sight rule after the conclusion of the appraisal until July 29, 2022, at which time Society stated its position for the first time. *See* Doc. 46 at 5.

Society's July 29, 2022, letter acknowledges that Yogeshwar's May 16, 2022, letter includes two demands of Society: "(1) to adjust the interior damage allegedly caused by the August 10, 2020 derecho; and (2) to pay for replacement of the insured's entire roof, pursuant to Chapter 191, Section 15.44(1)(b) of the Iowa Administrative Code, aka the 'Line of Sight Rule.'"  Doc. 46-3 at 19.  The letter goes on to explain why it believes those items were considered and rejected by the appraisal panel. *Id.* at 19-20.  The letter

---

[21] Neither party contends that the law of any state other than Iowa applies in this diversity action.

concludes: "Please do not hesitate to contact me if you wish to discuss this matter further." *Id.*

Society makes three arguments as to why waiver does not apply. First, it argues that pursuant to *Scheetz*, the parties had to be engaged in negotiations for settlement up to, through and beyond the contractual limitations period. Doc. 42-1 at 4. It argues that communication alone is insufficient and that Society's statement to "contact me if you wish to discuss this matter further" is "mere salutation."[22] Second, it argues July 29, 2022, was not the first time Yogeshwar knew Society's position on the issues of interior damage and application of the line of sight rule. Third, it argues that Yogeshwar cannot rely on its August 10, 2022, correspondence to Society as it is Society's conduct that must determine waiver.[23]

Society's first argument is grounded in *Scheetz*, which the court relied on to previously reject Society's position. In *Scheetz*, the insurer had offered to settle the claim several months before the expiration of the contractual limitations period. *Scheetz*, 324 N.W.2d at 303. The claimants rejected the offer and one day prior to the expiration of the contractual limitations period, the insurer came back with another offer. *Id.* The claimants rejected it and almost two months later, the insurer withdrew the offer and stated it would not be making any new offer of settlement. *Id.* After retaining new counsel, the claimants reached out several months later asking if the insurer would consider a specified amount. The Iowa Supreme Court noted there was some suggestion the claim was still in negotiation after this. The claimants filed suit years later – a little over three years after expiration of the contractual limitations period. *Id.*

---

[22] As Yogeshwar points out, salutation is not the proper word here as it means a greeting and is used at the beginning of a letter. A more appropriate word would be valediction or closing.

[23] Yogeshwar does not rely on this correspondence in its resistance to Society's motion. *See* Doc. 46 at 4-6.

On summary judgment, the insurer conceded that it may have waived the contractual limitations period when it made an offer one day prior to the end of the contractual limitations period but argued that the period then would have commenced on the day that it ended settlement negotiations by withdrawing its offer and stating it would not be making any further offers. *Id.* The Court held that when the insurer carried the negotiations through the end of the contractual limitations period "it could have had no other intent than to relinquish its contractual right to limit suits to the period." *Id.* at 304. The Court concluded that the insurer could not then recall its waiver and the waiver did not otherwise expire as a matter of law. *Id.* at 305. Therefore, the general statute of limitations for written contracts applied. *Id.*

The *Scheetz* Court acknowledged there is a split of authority on the issue and that some cases had factual distinctions, such as outright denial of liability as opposed to a dispute over the amount of loss. *Id.* (citing *Peloso v. Hartford Fire Ins. Co.*, 267 A.2d 498 (N.J. 1970)). The Court also acknowledged that other jurisdictions hold that a limitations period is waived if an unreasonably short time for bringing suit remains out of the prescribed period after the insurer has ceased to hold out inducements such as to delay filing of the action. *Id.* at 306.

*Scheetz* has less to do with waiver and more to do with what happens after waiver, as the initial waiver was conceded in that case. A case more on point is *Brunner v. United Fire & Cas. Co.*, 338 N.W.2d 151 (Iowa 1983), which Society does not address, except for facts that the Court relied on in reviewing the issue de novo. *See Brunner*, 338 N.W.2d at 153 (finding no evidence that defendant made any representation to induce Brunner to delay filing suit beyond the one-year period). More to the point is the Court's conclusion that there was a fact issue regarding implied waiver when the insurer denied liability six weeks before the one-year period remained. *Id.* at 152 (citing *Scheetz* for the proposition that "if an unreasonably short time for bringing suit remains out of the prescribed period after the insurer has ceased to hold out inducement such as to delay filing of the action" there may be waiver and that implied waiver is generally an issue of

18

fact for the jury). Importantly, the outcome in *Brunner* did not depend on active settlement negotiations near the end of the contractual limitations period, but the denial of liability, which is at issue here. As such, the absence of active settlement negotiations does not preclude Yogeshwar's waiver argument.

With regard to Society's second argument, that it denied the interior damage claim and application of the line of sight rule well before July 29, 2022, it cites the following portions of its correspondence with Yogeshwar:

- December 4, 2020 – "Society Insurance has investigated this loss and do not feel there were damages to the building from the August 10, 2020 storm . . . . Some interior water damage was reported but above this area of the water damage there was no roof damage or patch jobs according to our expert."

- April 27, 2021 – "We have made a coverage decision and feel we have enough information to support it."

- June 22, 2021 – reporting its "position has also not changed at this time"

*See* Doc. 42-4 at 38, 40-41. Society also cites Yogeshwar's correspondence, in which counsel for Yogeshwar communicated via email with Roberts and Storm Recovery on March 15, 2022, concerning whether the dispute was over interior work only. *Id.* at 42-43. This was followed up by a letter to Society on May 16, 2022, in which counsel for Yogeshwar identified the two disputes on the claim – interior damage and application of the line of sight rule and raised the issue of Strombeck's representations during the appraisal. *Id.* at 44-46. Taking this evidence together, Society argues there is no admissible evidence to support Yogeshwar's allegation that it did not know Society denied the claim until July 29, 2022.

Yogeshwar relies on implied waiver, which is generally an issue of fact for the jury. *See Scheetz*, 324 N.W.2d at 306. While the correspondence itself is undisputed, the parties greatly dispute the inferences to be drawn from such evidence. Society's position is that it communicated denial of the claim early on such that Yogeshwar had

19

sufficient time to evaluate and file a legal action. Yogeshwar's position is that Society had failed to sufficiently evaluate certain aspects of its claim (or denied it on improper grounds) such that Society's consideration of the claim was incomplete until its July 29, 2022, letter, which failed to mention the upcoming expiration of the contractual limitations period and left Yogeshwar little time to evaluate pursuing legal action.

Of course, the parties rely on other facts and circumstances to support their positions on whether the contractual limitations period was waived and it is appropriate for the factfinder "to consider all of the circumstances surrounding the parties' negotiations in determining whether defendant engaged in conduct through which it relinquished the limitation." *Brunner*, 338 N.W.2d at 153. Giving Yogeshwar the benefit of all reasonable inferences that can be drawn from the facts, *see Matsushita*, 475 U.S. at 587-88, I find there is a genuine dispute for trial as to whether Society waived the contractual limitations period.

### 2.    *Breach of Contract*

Society argues it is entitled to summary judgment on Yogeshwar's breach of contract claim because: (a) Yogeshwar elected appraisal, all three members of the appraisal panel agreed on the award and Society issued payment thereon; (b) Yogeshwar provided no information suggesting the line of sight rule could apply to the building's patchwork roof, (c) the claimed interior damage was preexisting since at least 2015, (d) Yogeshwar did not cooperate in the investigation and (e) Yogeshwar failed to promptly produce requested documents. Yogeshwar argues that a genuine issue of material fact exists on the breach of contract claim. I will address each of Society's arguments in turn.

20

### a.    Appraisal Award[24]

Society argues Yogeshwar elected appraisal and is bound by the appraisal award. Yogeshwar argues that the appraisal award should be set aside based on mistake, fraud or malfeasance as alleged in Yogeshwar's May 16, 2022, letter.  It argues that instead of investigating any mistake, fraud or malfeasance in the appraisal process, Society denied such assertions.  It contends it has submitted admissible evidence to demonstrate a fact issue that Society breached the Policy by Society's failure to (a) properly investigate Yogeshwar's claims of mistake, fraud or malfeasance in the appraisal process, (b) adjust the interior damages after the appraisal panel determined there was in fact storm damage to the property from the August 10, 2020, derecho and (c) consider the application of the line of sight rule after the conclusion of the appraisal.

To prevail on a breach of contract claim under Iowa law, a plaintiff must prove:

(1) the existence of a contract; (2) the terms and conditions of the contract; (3) that [plaintiff] has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998) (citing *Iowa-Illinois Gas & Elec. Co. v. Black & Veatch*, 497 N.W.2d 821, 825 (Iowa 1993)).  A party breaches a contract when, without legal excuse, the party fails to perform any promise that forms a whole or a part of the contract.  *Id.* (citing *Magnusson Agency v. Pub. Entity Nat'l Co. Midwest*, 560 N.W.2d 20, 27 (Iowa 1997)).

Because "insurance policies are contracts between the insurer and insured, [they] must be interpreted like other contracts, the objects being to ascertain the intent of the parties."  *Talen v. Emps. Mut. Cas. Co.*, 703 N.W.2d 395, 407 (Iowa 2005).  "If the language of the policy is unambiguous, . . . that intent is determined by what the policy

---

[24] Yogeshwar's motion (Doc. 44) for partial summary judgment argues I should set aside the appraisal award based on fraud, mistake or misfeasance.  I will consider both motions in this section, keeping in mind the parties' respective burdens.

itself says." *Monroe Cnty. v. Int'l Ins. Co.*, 609 N.W.2d 522, 525 (Iowa 2000). "An ambiguity exists when, after application of our relevant rules of interpretation, a genuine uncertainty results as to which of two or more meanings is proper." *Am. Fam. Mut. Ins. Co. v. Petersen*, 679 N.W.2d 571, 576 (Iowa 2004), *amended on denial of reh'g* (May 6, 2004). "When two reasonable interpretations exist, the policy is construed most favorably to the insured." *Id.* However, courts "will not give a strained or unnatural reading to the words of the policy to create ambiguity where there is none." *Morgan v. Am. Fam. Mut. Ins. Co.*, 534 N.W.2d 92, 99 (Iowa 1995), *overruled on other grounds by Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775, 784 (Iowa 2000).

The party claiming entitlement to coverage under the policy must prove compliance with its terms. *Am. Guar. & Liab. Ins. Co. v. Chandler Mfg. Co.*, 467 N.W.2d 226, 228 (Iowa 1991); *Bruns v. Hartford Accident & Indem. Co.*, 407 N.W.2d 576, 579 (Iowa 1987); *Henschel v. Hawkeye–Security Ins. Co.*, 178 N.W.2d 409, 415 (Iowa 1970); *Henderson v. Hawkeye–Security Co.*, 106 N.W.2d 86, 91 (Iowa 1960). The party claiming coverage may meet this burden of proof by showing: (1) substantial compliance with the condition precedent; (2) the failure to comply was excused or waived; or (3) the failure to comply was not prejudicial to the insurer. *Am. Guar.*, 467 N.W.2d at 228; *Henderson*, 106 N.W.2d at 92. Under Iowa law, waiver is "the intentional relinquishment of a known right." *Huisman v. Miedema*, 644 N.W.2d 321, 324 (Iowa 2002) (quoting *State v. Hallum*, 606 N.W.2d 351, 354 (Iowa 2000)). Further, an insured's violation of a condition precedent is presumed to be prejudicial to the insurer. *Met–Coil Sys. Corp. v. Columbia Cas. Co.*, 524 N.W.2d 650, 658 (Iowa 1994); *Am. Guar.*, 467 N.W.2d at 228. However, the insured may rebut the presumption if it shows the lack of prejudice by satisfactory evidence. *Met–Coil*, 524 N.W.2d at 658; *Western Mut. Ins. Co. v. Baldwin*, 137 N.W.2d 918, 925 (Iowa 1965).

When parties engage in an appraisal, courts must "decide coverage questions, but the appraisers' determination of the factual cause and monetary amount of the insured loss is binding on the parties absent fraud or other grounds to overcome a presumption

22

of validity." *Walnut Creek Townhome Assoc. v. Depositors Ins. Co.*, 913 N.W.2d 80, 87 (Iowa 2018). "But this does not mean the court is free to disregard the appraisal award as to factual disputes that may be dispositive of coverage questions." *Id.* at 91. An appraisal award "will not be set aside unless the complaining party shows fraud, mistake or misfeasance on the part of an appraiser or umpire." *Id.* at 89.

Yogeshwar's argument that the appraisal award should be set aside is based on evidence (in the form of Roberts' deposition testimony) that Strombeck told the rest of the appraisal panel that (1) they could not readjust the interior claim and (2) that application of the line of sight rule would have to be addressed after the appraisal between the contractor and Society. Doc. 44-1 at 3-4. Yogeshwar argues these representations were, at minimum, a mistake because Society has taken a different position than represented by Strombeck. Society asserts the interior damages were addressed by the appraisal panel and that the line of sight rule was also considered and rejected by the appraisal panel. Roberts has testified he would not have agreed to the appraisal award but for Strombeck's representations as he believed there was interior damage from the August 10, 2020, derecho and that the line of sight rule should have applied allowing for replacement of the entire roof.

Society argues it adjusted the interior damage claim by concluding the claimed interior damage was not covered under the Policy. It cites Strombeck's and Roberts' deposition testimony acknowledging that the claimed interior damage existed prior to the August 10, 2020, derecho and Google photographs showing the pre-existing damage. Doc. 45 at 11. Society notes that the appraisal panel reviewed the interior damage and omitted it from the appraisal award because it predated the claimed date of loss.

For purposes of both motions, I find there is a genuine issue of material fact on the issue of whether the appraisal panel considered interior damage and application of the line of sight rule. Yogeshwar has submitted evidence that the appraisal panel did not consider these items. It cites the following deposition testimony from Roberts:

Q:      In the appraisal panel discussions was there any discussion regarding supplements following the appraisal award?

A:      I was told that we would have – that the contractor would have to take it up with the insurance company for supplementing the line of sight or the color matching of the shingles per slope and elevation.

Q:      And who informed you of that?

A:      I'm not for sure if it was Mr. Strombeck or Mr. Marske.

. . .

Q:      And if you had – but for the statement that the line of sight could be or would be considered as a supplement after the appraisal award, would you have conceded to the appraisal award as written?

A:      Probably not.

. . .

Q:      You testified multiple times that Mr. Strombeck informed you that the panel could not readjust the interior claim; correct?

A:      That is his exact words, yes.

Q:      But for Mr. Strombeck's statement that you could not readjust the interior claim, would you have agreed to the appraisal award as written currently?

A:      No.

Q:      And it was your opinion that certain interior damage was caused from the August 19, 2020 derecho?

A:      I felt that, yes.

Doc. 44-3 at 23-24. Society has submitted evidence that the appraisal panel considered, but rejected, these items as part of the appraisal award. It cites Strombeck's deposition testimony in which he described the interior damage they observed and then testified:

> This damage had been there for quite some time. There had been multiple repair attempts to it prior to the date of loss, and so this was an ongoing thing because the roof was never properly repaired. Due to the fact it was

24

not on the date of loss, the appraisal panel unanimously agreed not to consider it in their award.

*See* Doc. 45-4 at 88. As to the line of sight rule, Strombeck testified:

[T]his is a pretty generic colored shingle, and there's going to be shingles available on the market that are going to represent a reasonable match anyhow. So there is never a line of sight debate at all or really substantial discussion with the appraisal panel.

*Id.* at 91. He also testified: "The public adjustor [sic] who's representing the insured here, and if he's a public adjustor [sic], he's well aware of line of sight. If he was going to argue match, he would probably have pulled an Itel for match and provided that to the panel. None was provided." *Id.* at 92. When asked whether it was fair to say the panel did not consider or determine whether there was a match available under the line of sight rule, Strombeck testified that he did not look to see if there was a matching shingle available stating "that's a very common color like a weather wood color. So every shingle manufacturer makes a similar color. There's nothing unique about that color." *Id.* He later testified:

Q:    I believe you testified earlier that you weren't sure that the panel discussed specifically the line of sight matching and applicability, is that correct or incorrect?

A:    That's actually correct, and basically I'm working off memory now four years later and so obviously we discussed it.

*Id.* at 94-95. Marske, the umpire, testified he could not "recall anything specifically" with regard to discussion of interior water damage. Doc. 44-3 at 28. He testified, "[t]here was never any documents supplied or estimates or frankly I didn't – it didn't appear that it was in this appraisal. It was never brought up as part of the appraisal, at least the appraisers to me that I recall." *Id.* Nor could he recall any discussion among the panel regarding the applicability of a line of sight rule. *Id.* at 28. Marske testified that Roberts and Strombeck never came to him for any decisions to be made. *Id.*

Based on the record, there are clearly factual disputes regarding (1) whether the appraisal panel considered interior damage and application of the line of sight rule and decided not to include either in the appraisal award and (2) whether Strombeck precluded consideration of these matters by statements he made to Roberts. Viewing the facts in the light most favorable to Yogeshwar, a jury could credit Roberts' testimony and conclude Strombeck's statements at least amounted to mistake sufficient to set aside the appraisal award. Viewing the facts in the light most favorable to Society, a jury could conclude that Strombeck never made such statements or that they did not rise to the level of fraud, mistake or misfeasance required to set aside the appraisal award and that the appraisal panel considered and rejected compensation for those items.

Neither party is entitled to summary judgment on the issue as each has presented evidence in response to the opposing party's motion demonstrating a genuine issue of material fact. As such, at the summary judgment stage, the appraisal award neither precludes Yogeshwar's breach of contract claim at this stage nor must be set aside. The jury must determine whether the parties are bound by the award.

### b. Line of Sight Rule

Society argues that there can be no breach of contract based on application of the line of sight rule because Yogeshwar has offered no evidence demonstrating that "line of sight" required more repairs. It argues the rule does not apply for four reasons: (1) there was no reasonably uniform appearance before the claimed loss, (2) Strombeck noted that the original shingle color was weather wood, which is a widely carried color available from any manufacturer, (3) the appraisers and umpire agreed the scope of the damage was limited to two slopes of the roof, for which they agreed to full replacements and (4) Yogeshwar had ample opportunity to demonstrate why, if at all, the new shingles would not match.

Yogeshwar argues that Society did nothing to investigate whether a color or pattern match existed for the majority of the shingles on the Property. It notes that Yogeshwar's

26

contractor had attempted to find a match but was unable to do so as the shingles had been discontinued, which is why the patching was done in different colors. Yogeshwar argues this is sufficient to demonstrate applicability of the line of sight rule. It notes there is no legal authority providing that the non-uniformity prior to the loss precludes application of the line of sight rule, particularly where an insured was attempting to mitigate damages by patching the roof and a color match was not available.

The line of sight rule provides:

> When a loss requires replacement of items and the replaced items do not match in quality, color or size, the insurer shall replace as much of the item as is necessary to result in a reasonably uniform appearance within the same line of sight. This subrule applies to interior and exterior losses. Exceptions may be made on a case-by-case basis.

Iowa Admin. Code 191-15.44(1)(b). The evidence Yogeshwar cites in support of application of this rule is an affidavit by Alejandro Mayorga of Storm Recovery. Doc. 46-3 at 87. Society argues this affidavit is immaterial because it is conclusory and was not disclosed as expert testimony or otherwise in discovery. It further argues that the rule requires only *reasonable* uniformity of sight, not an identical twin from the same manufacturer. In order to be material, Society asserts that the affidavit would have to attest there are no similar colors from any manufacturer and this would have had to be communicated to Society. Similarly, Society argues it is immaterial that Society did nothing to investigate whether there was a color or pattern match that existed for the majority of the shingles on the subject property because it is the insured's burden to supply the evidence it wants the carrier to consider.

Mayorga's affidavit states that he is the manager of Storm Recovery and that he completed temporary patches to the roof of the Subject Property after August 10, 2020. Doc. 46-3 at 87. He notes that prior to patching the roof, he attempted to find shingles of like color and pattern to the majority of the shingles on the roof of the Property, but determined that such shingles had been discontinued, which was the reason the patches on the roof were of different color shingles than the original. *Id.*

27

The difficulty with this issue is that Yogeshwar purportedly did not raise line of sight concerns during the appraisal because Strombeck or Marske allegedly told Roberts that the contractor had to take it up with the insurer post-appraisal for supplementing the line of sight. Doc. 44-3 at 23-24. Therefore, the fact that Yogeshwar did not present evidence concerning line of sight does not entitle Society to summary judgment, as there is a fact issue regarding whether the alleged representations were made to Roberts, which arguably could have affected Roberts' and Yogeshwar's advocacy for application of the line of sight rule. For the same reason, the appraisal decision is not dispositive of this issue as the appraisal itself was arguably affected by representations by Strombeck and/or Marske.

Society's other two arguments focus on the non-uniformity of the roof. According to Mayorga's affidavit, he could not find similar color and pattern of shingles to patch the roof after the derecho and determined that the matching shingles had been discontinued. While I agree this affidavit is somewhat conclusory, Yogeshwar has submitted evidence to explain the lack of uniformity and that it occurred after the loss.[25]

---

[25] Society argues that Yogeshwar does not dispute that the damage was preexisting and that no information was timely provided to support application of the line of sight rule. However, Society's Statement of Undisputed Material Facts does not include any statement of fact related to such for Yogeshwar to admit or deny and offer evidence in support. *See* Doc. 42-2. The statement of fact Society cites in support of the lack of uniform appearance before the claimed loss is based on what the appraisers saw at the time of the appraisal, which was after the loss. *See* Doc. 42-1 (citing ¶ 28 of Society's Statement of Undisputed Material Facts). The only other statements of fact that come close are that Strombeck "testified to reviewing photographs of the property's roof which reflected both damage to the roof and repair patches predating the August 10, 2020 claimed date of loss" and that "Society requested supporting documentation including, but not limited to, repair invoices from Plaintiff" and Yogeshwar provided none. *Id.* With regard to Strombeck's testimony, Yogeshwar admitted that Strombeck testified he could see hail and wind damage from Google Earth photos from June 2015, but denied the balance of the paragraph as unsupported by admissible evidence. Even if admissible, Yogeshwar has submitted evidence in the form of Mayorga's affidavit in rebuttal. With regard to repair invoices, Yogeshwar admits that Society requested such invoices, but Yogeshwar notes it did not provide any because it never received an invoice from the contractor who did patchwork after the derecho and Yogeshwar paid him in cash. Doc. 46-1 at 18-19.

As such, there is a fact issue as to whether the non-uniformity existed prior to the date of loss. In addition, Society has cited no authority that the line of sight regulation does not apply when an insured patches the roof with non-matching shingles in order to mitigate damages such that Mayorga's affidavit would be immaterial. Because there is a fact issue as to whether there was non-uniformity prior to the date of loss and no authority providing that the line of sight rule cannot apply when viewing the disputed facts in the light most favorable to Yogeshwar, Society is not entitled to summary judgment on this aspect of Yogeshwar's breach of contract claim.

### c.    *Interior Damage*

Society argues the interior damage was pre-existing and Yogeshwar provided no evidence of causation of the interior damage. It notes the appraisal panel determined that the damage was pre-existing and that this is confirmed by the hotel's Google webpage imagery depicting the same damage from 2015 and 2019. Additionally, it notes that Strombeck concluded the derecho did not cause the interior damage because above some of the damage (such as the fireplace), there was no storm roof damage. Yogeshwar did not produce any documentation of the scope of the interior claim, an expert causation opinion or other materials to support its claim. As such, Society argues there was no breach by declining to compensate the claimed interior damage.

Yogeshwar argues there is a genuine issue of material fact as to the interior damage because Society relies on inadmissible evidence in the form of photographs dating back to 2015 when Yogeshwar did not own the property until mid-2019. It relies on Roberts' testimony that he felt some of the interior damage was proximately caused by the derecho.

I agree with Yogeshwar that this issue presents a disputed fact. Yogeshwar has come forward with evidence in the form of Roberts' testimony to support of its breach of contract claim based on Society's failure to compensate interior damages:

Q:    And it was your opinion that certain interior damage was caused
from the August 10, 2020 derecho?

A:     I felt that, yes.

Q:     And the appraisal inspection occurred December 16, 2021, so over
       a year after the date of loss; correct?

A:     Yes.

Q:     And was some of the interior damage that you observed under some
       patching areas of the roof?

A:     Yes.

Doc. 46-3 at 7.  While Society argues this is rebutted by photographs and Strombeck's testimony, it is for a jury to determine which evidence is more credible.  As such, Society is not entitled to summary judgment as to this aspect of Yogeshwar's breach of contract claim.

### d.     Material Misrepresentation

Society argues the fraud/concealment provision of the Policy forecloses coverage because Yogeshwar misrepresented in an insurance application that the roof was installed in 2019.[26]  It also cites Yogeshwar's Google webpage, in which interior damage is visible going back to 2015 and argues Yogeshwar's misrepresentation concerning the cause of the interior damage also forecloses coverage.

Yogeshwar argues Society's argument lacks factual foundation as the cited insurance application is not signed by anyone from Yogeshwar and Society's adjuster admitted she did not know who prepared the document, how it was transmitted to Society or how Society came into possession of the document.

---

[26] Society bases this argument on Strombeck's testimony that the roof was original, approximately 20-years-old and at the end of its useful lifetime.

As noted above, there are disputed issues of material fact concerning the interior damage. With regard to the date of the roof, there is insufficient evidence to conclude that Yogeshwar willfully misrepresented any material fact on the insurance application. As noted by Yogeshwar, the insurance application is not signed. *See* Doc. 42-3 at 185-210. There is no evidence as to who made this statement and the context in which it was made – such as through an agent and what questions were asked of the insured. Society has not demonstrated it is entitled to summary judgment on this basis.

### e.    Failure to Provide Requested Materials

Society argues Yogeshwar did not produce requested supporting documentation for its Proof of Loss, including repairs, reports of causation, or otherwise as required by the Policy. It notes that Yogeshwar provided only invoices, but they were untimely and did not support the amount requested in the Proof of Loss.

Yogeshwar notes that Society's adjuster, Stellingworth, testified that before she received the Proof of Loss, she had the documentation to support the Proof of Loss, including an estimate from Yogeshwar's contractor for the exterior work and at least one interior bid by Yogeshwar's public adjuster, Evan Bruce. After submitting the Proof of Loss, Yogeshwar's public adjuster provided additional information and clarification on the supporting documentation.

Society has not met its burden of proving it is entitled to summary judgment on this basis. Yogeshwar has come forward with evidence that at the time Society provided the Proof of Loss form to be completed, Yogeshwar had already provided Society the Storm Recovery estimate for the exterior and had also provided at least one proposal for the interior damage. Doc. 46-3 at 74. Stellingworth testified that after Yogeshwar provided the Proof of Loss, she noted in the file: "No other supporting documentation with proof." *Id.* Stellingworth followed up with Bruce, who provided additional information via email or mail. *Id.* While Yogeshwar may not have provided sufficient documentation to support its Proof of Loss, that is different than failing to cooperate

31

under the Policy such that Society was relieved from performing its obligations under the Policy. Society has not demonstrated it is entitled to summary judgment on this basis.

For all the above reasons, I find there is a genuine issue of material fact as to Yogeshwar's breach of contract claim. Society's motion for summary judgment on this claim is denied.

### 3.    Bad Faith

Society argues Yogeshwar's bad faith claim fails as a matter of law because Society had a reasonable basis to pay only the appraisal award and there is no evidence that Society knew it could not reasonably rely on the three-signature appraisal award, its appointed appraiser, its retained inspector and his two authored reports, its own adjuster's personal inspection of the property and Google imagery.

Yogeshwar argues there is a genuine issue of material fact on this claim because one of the reports Society relied on initially determined there were no storm reports for Peosta, Iowa on August 10, 2020, yet a later report noted there were significant wind reports seven miles from the claim location and hail reports twelve miles from the claim location on the date of the claimed loss. Yogeshwar notes that Society had already obtained its own wind reports and knew the Property experienced winds in excess of 60 miles per hour on the date of loss. Therefore, Society could not have reasonably relied on this report. Yogeshwar also relies on evidence that Society failed to investigate Yogeshwar's claim of mistake, fraud and/or malfeasance in the appraisal process, failed to adjust the interior damages after the appraisal panel determined the Property sustained storm damage and failed to consider application of the line of sight rule after the conclusion of the appraisal.

To prevail on a first party bad faith insurance claim pursuant to Iowa law, a plaintiff must show "(1) that the insurer had no reasonable basis for denying benefits under the policy and, (2) the insurer knew, or had reason to know, that its denial was without basis." *Thornton v. American Interstate Insurance Company*, 897 N.W.2d 445,

461-62 (Iowa 2017) (quoting *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 657 (Iowa 2002)). The first element is objective and the second element is subjective. *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005).

With regard to the first element, "[a] reasonable basis exists for denial of policy benefits if the insured's claim is fairly debatable either on a matter of fact or law." *Bellville*, 702 N.W.2d at 473. This issue may be decided as a matter of law. *Id.* A claim is "fairly debatable when it is open to dispute on any logical basis . . . . Stated another way, if reasonable minds can differ on the coverage-determining facts or law, then the claim is fairly debatable." *Bellville*, 702 N.W.2d at 473. Because the first element's focus is on whether there was a debatable issue, it is not dispositive if the insurer's position was ultimately incorrect. *Id.* Instead, the dispositive question is whether a fairly debatable claim existed. *Id.* When "an objectively reasonable basis for denial of a claim *actually exists*, the insurer cannot be held liable for bad faith as a matter of law." *Id.* at 474 (emphasis in original). Courts do not weigh the evidence an insurance company considered; they determine simply whether evidence existed to justify the company's denial of the policyholder's claim. *Id.*

Even if a policyholder shows that the insurance company lacked an objective reasonable basis to deny the claim, bad faith liability attaches only if the insurance company "knew or should have known that the basis for denying its insured's claim was unreasonable." *Id.* "An insurer's negligent or sub-par investigation or evaluation of a claim is relevant to the fact finder's determination of whether the insurer should have known its denial lacked a reasonable basis." *Id.* However, an improper investigation alone "is not sufficient cause for recovery if the insurer in fact has an objectively reasonable basis for denying the claim." *Id.* (cleaned up).

Society is entitled to summary judgment on Yogeshwar's bad faith claim. Yogeshwar cannot, as a matter of law, meet the objective bad faith element that Society had no reasonable basis for paying no more than the appraisal award. Yogeshwar has identified one report that it claims incorrectly concluded a lack of storm damage in the

33

area.  As Society points out, the court's job is not to weigh conflicting evidence that was before the insurer, but to examine whether evidence existed to justify the claim's denial. *See Thornton*, 897 N.W.2d at 465 ("In many cases, a directed verdict or summary judgment for the insurer dismissing the bad-faith claim may be appropriate because *some* evidence existed to justify its denial as a matter of law.") (emphasis in original).  Here, there was significantly more evidence Society relied on aside from that one report.  After Society had conducted its own investigation, Yogeshwar requested an appraisal pursuant to the Policy.  Each party chose its own appraiser and those appraisers chose an umpire. While Yogeshwar claims that Society's appraiser, Strombeck, made misrepresentations about interior damage and application of the line of sight rule, other evidence provided a reasonable basis for Society to conclude that the appraisal panel agreed not to consider those items and that coverage was not otherwise required for those items.  That evidence includes Strombeck's opinion, two Tekton reports, Stellingworth's inspection and Google imagery.  Society's decision to continue to deny coverage as to those aspects of Yogeshwar's claim was based on "some evidence."  *Thornton*, 897 N.W.2d at 465.

While the objective element is dispositive, Yogeshwar's claim also fails on the subjective element.  Yogeshwar has provided no evidence that Society knew it could not rely on the cited evidence in declining to provide coverage for interior damage or based on the line of sight rule.  Again, it relies on the first Tekton report stating there were no storm reports for damage in Peosta, Iowa on August 10, 2020, and evidence that Society had obtained its own reports indicating the area of the Property experienced winds in excess of 60 miles per hour on the date of loss.  Doc. 46 at 9.  If that report was the only evidence Society relied on, Yogeshwar may have a colorable argument, but Society cites several other bases for its decision, all of which have gone unaddressed by Yogeshwar. Yogeshwar is unable to demonstrate a fact issue as to whether Society knew or should have known its denial of Yogeshwar's claim was without basis.  Society is entitled to summary judgment on Yogeshwar's claim of bad faith.

### 4. Fraud

Society argues it is entitled to summary judgment on Yogeshwar's fraud claim because (1) Yogeshwar relies entirely on its own allegations in the complaint, (2) Strombeck and Marske are not Society employees and (3) there is no evidence of misrepresentations, falsity or reasonable reliance by Yogeshwar.

Yogeshwar argues there is a genuine issue of material fact on its fraud claim, which is premised on Strombeck's statements during the appraisal that (1) the appraisal panel could not readjust the interior claim and (2) the application of the line of sight rule would have to be something Yogeshwar's contractor took up with Society as a supplement to the insurance claim after the conclusion of the appraisal.[27] It contends that after raising the issue to Society after the appraisal, Society has refused and continues to refuse to adjust the interior damages and pay for replacement of the entire roof of the Property pursuant to the line of sight rule.

Society's motion raises two issues related to agency: (1) neither Strombeck nor Marske are Society employees such that Society cannot be liable for any misrepresentations they may have made during the appraisal and (2) the alleged misrepresentations were made to Roberts, not Yogeshwar. These issues are dispositive because the first element of a fraud claim is that the *defendant* made a representation to

---

[27] Yogeshwar relies on Roberts' deposition testimony for this claim. However, Society points out that in response to a discovery request regarding the nature of Yogeshwar's fraud claim, Yogeshwar responded "See the allegations contained in Yogeshwar's Second Amended Petition for Declaratory Relief, Petition at Law and Jury Demand (ECF No. 37), and the documents produced in this case." Doc. 42-3 at 137-38. As Society notes, Yogeshwar cannot rely on evidence in resistance to this motion that was not previously disclosed as required by Rule 26. *See* Fed. R. Civ. P. 37(c)(1)("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). *See also Thomas v. Corwin*, 438 F.3d 516, 526-27 (8th Cir. 2007) ("Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment.").

the *plaintiff*. *See Dier v. Peters*, 815 N.W.2d 1, 7 (Iowa 2012).[28]  Yogeshwar fails to address these issues, stating only that "[i]t is axiomatic that an entity cannot act, except through its duly appointed representatives, which in this specific instance was Paul Strombeck."  Doc. 46 at 11.  Yogeshwar has come forward with no evidence or even argument to support an agency relationship or any other legal theory on which Society could be held liable for Strombeck's statements.  For instance, there is no evidence that Society directed Strombeck to make such representations concerning the interior damage or application of the line of sight rule or even knew about such representations until receiving Yogeshwar's letter.

Yogeshwar also misconstrues the burden on summary judgment in arguing that Society must establish that Strombeck's statements cannot be attributed to it.  Yogeshwar bears the burden of proving Society's liability at trial, and thus at the summary judgment stage.  *See Celotex*, 477 U.S. at 322 ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . .  The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.")

Courts have typically found that appraisers are not agents of the parties who appoint them.  As the Tenth Circuit has explained:

> [W]hile the appraisers are appointed by the parties, they are not subject to the control of the parties.  They are not agents in law and ought not to be in practice.  If appraisers were subject to the direction of the parties, the whole proceeding would be a useless ceremony, for if the parties cannot agree upon the loss by direct negotiation (and the appraisal clause is

---

[28] The other elements are that the representation was false; the representation was material; the defendant knew the representation was false; the defendant intended to deceive the plaintiff; the plaintiff acted in justifiable reliance on the truth of the representation; the representation was a proximate cause of plaintiff's damages and the amount of damages.  *Dier*, 815 N.W.2d at 7.

Case 2:23-cv-01005-LTS-KEM   Document 53   Filed 07/09/24   Page 36 of 42

operative only in case of disagreement) they could not agree through agents subject to their direction. Fault of an appraiser is therefore not the fault of the party appointing him.

*Norwich Union Fire Ins. Society v. Cohn*, 68 F.2d 42, 44 (10th Cir. 1933). Courts have recognized an exception to this general rule when an appraiser does not act in a disinterested manner and collaborates with the insurer or otherwise conducts himself or herself as an agent for the insurer. *See Niagara Fire Ins. Co. v. Bishop*, 39 N.W. 1102, 1106 (Ill. 1894) ("If an insurance company selects a man for appraiser who, instead of acting as such, conducts himself in the interest of the company, and as an agent for the company, the company will be held responsible for such conduct on his part as inures to the benefit of the company."). Yogeshwar has provided no evidence that Strombeck was not acting in a disinterested capacity such that his actions could be imputed to Society. Because Yogeshwar has produced no evidence or provided any legal basis for Society's liability based on the actions of its selected appraiser, Society is entitled to summary judgment on Yogeshwar's fraud claim.

### 5. Tortious Interference with Contract

Society argues it is entitled to summary judgment on Yogeshwar's tortious interference claim. The elements of tortious interference with contract under Iowa law are:

> (1) plaintiff had a contract with a third-party; (2) defendant knew of the contract; (3) defendant intentionally and improperly interfered with the contract; (4) the interference caused the third-party not to perform, or made performance more burdensome or expensive; and (5) damage to the plaintiff resulted.

*Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 399 (Iowa 2001) (quoting *Jones v. Lake Park Care Ctr., Inc.*, 569 N.W.2d 369, 377 (Iowa 1997)). Society argues that Yogeshwar has come forward with no evidence of any improper statement or conduct

and no evidence that Society intended to interfere with Yogeshwar's relationship with West Bend.

Yogeshwar relies on the deposition testimony of West Bend adjuster, Matt Davis, that Strombeck told him all damages to the Property that were in existence on December 15, 2021, were addressed during the appraisal panel's December 16, 2021, inspection. It argues this contradicts Strombeck's report to Society that "[t]he appraisal panel agreed that none of the new damage . . . would be considered in our evaluation." Doc. 46-3 at 31. Yogeshwar argues West Bend denied Yogeshwar's pending claim based on a December 15, 2021, date of loss due to Strombeck's representation and a reasonable jury could conclude Strombeck's statements caused West Bend to breach its policy with Yogeshwar.

As with its meritless fraud claim, Yogeshwar relies on statements by Strombeck, but has set forth no evidence from which a jury could conclude that Strombeck was acting as an agent of Society such that liability could attach to Society. For the reasons set forth above with regard to Yogeshwar's fraud claim, Society is entitled to summary judgment on Yogeshwar's claim of tortious interference with contract.

**B.**     *West Bend's Motion for Summary Judgment*

West Bend seeks summary judgment on Yogeshwar's claims of breach of contract and bad faith. Yogeshwar does not resist the motion with respect to the bad faith claim and withdraws that claim against West Bend. *See* Doc. 49 at 1. As such, I will address the breach of contract claim only.

West Bend argues Yogeshwar's breach of contract claim fails as a matter of law because (1) Yogeshwar's claimed damage in the amount of $222,622.93 was sustained prior to the December 2021 storm and any damage that was caused by the December storm was below the West Bend Policy deductible and (2) Yogeshwar violated the Policy's concealment, misrepresentation or fraud provision.

Yogeshwar argues that West Bend's motion is unsupported by any admissible evidence because much of its evidence lacks foundation under Federal Rule of Evidence 901(a).[29] As to the merits, Yogeshwar argues it complied with all the terms of the West Bend Policy, noting that it does not explicitly require the insured to submit documentation in support of the claimed amount of damage and West Bend also did not request any such documentation. In any event, Yogeshwar argues this is immaterial as West Bend had already determined it would deny the claim and was not relying on any information in the Proof of Loss.

With regard to the breach, Yogeshwar relies on Mayorga's declaration as well as an ITEL report[30] he provided to West Bend supporting his position that the roof could not be repaired but needed to be replaced. Yogeshwar argues that repairs of slopes 1 and 2, as contemplated by the Society appraisal award is insufficient because a contractor will not be able to remove a row of shingles without damaging the adjoining shingles on the back slope. Yogeshwar argues it has submitted sufficient evidence to demonstrate a genuine issue of material fact as to the repairability of the roof and whether West Bend breached the West Bend Policy by refusing to provide sufficient coverage to remedy the storm damage.

In order for Yogeshwar's evidence to be material, it would need to provide evidence that the roof needed to be replaced (or that repairs exceeded the $10,000 deductible) as a result of the December 15, 2021, weather event. Yogeshwar relies on Mayorga's affidavit, in which he states he evaluated the roof after the August 10, 2020, derecho and after the December 15, 2021, weather event. He observed new damage as a result of the December 15, 2021, event stating: "After re-evaluation of the roof after

---

[29] As the nonmoving party and party who bears the burden of proof at trial, I am more concerned with whether Yogeshwar can provide admissible evidence demonstrating a genuine issue of material fact for a jury.

[30] The ITEL report considers only slopes 1 and 2. *See* Doc. 49-3 at 102-03.

the December 15, 2021 weather event, I again determined the roof of the Subject Property required a full replacement to adequately remedy the storm damage from either the August 10, 2020 derecho or the December 15, 2021 weather event, as the condition of the shingles had not improved." Doc. 49-3 at 240. West Bend argues that even if the roof needed to be replaced because of the August 10, 2020, derecho, West Bend cannot be liable if the roof had not been replaced by December 15, 2021. Doc. 52 at 2-3.

The Society appraisal panel determined that the damage from the derecho was limited to slopes 1 and 2. Mayorga's opinion does not appear to be based on damage to the entire roof requiring replacement, but on replacement of some shingles (on slopes 1 and 2) interfering with existing shingles as well as the age of the roof. *See* Doc. 49-3 at 238, ¶ 6 ("I evaluated the roof of the Subject Property after the August 10, 2020 derecho and determined that based upon the age of the roof, the roof required a full replacement to properly remedy the storm damage caused by the August 10, 2020 derecho."); *Id.* at 239, ¶ 8 ("Specifically, I observed storm damage to the ridge cap of the Subject Property's roofs both after the August 10, 2020 derecho and additional ridge cap damage after the December 15, 2021 weather event."); *Id.* at ¶ 9 ("I understand an appraisal award was entered for the August 10, 2020 insurance claim, providing for replacement of the second story front slopes of the Subject Property's roof only, and includes a new ridge cap for the second story roof of the Subject Property."); *Id.* at ¶ 10 ("Removing the second story front slopes and ridge cap of the Subject Property will necessarily cause irreparable damage to the adjoining second story back slopes of the Subject Property."); *Id.* at ¶ 11 ("Specifically, during the removal of the ridge cap, the shingles on the adjoining second story back slopes of the Subject Property, which are not covered by the appraisal award, will be irreparably damaged because of their brittle condition."); *Id.* at ¶ 12 ("A contractor will <u>not</u> be able to remove a single row of shingles on the adjoining second story back slopes without damaging the shingles on the row underneath it, which will have a domino effect of damaging the shingles below that row and so on and so forth.") (emphasis in original).

40

In other words, it is not damage from the December 15, 2021, storm that requires replacement of the entire roof, but the replacement of slopes 1 and 2 and the ridge cap pursuant to the Society appraisal award, because such repairs will purportedly impact the adjacent slopes. That issue concerns Yogeshwar's claim with Society, not West Bend. Yogeshwar provides no other evidence to suggest that damage to the roof from the December 15, 2021, storm is both (1) not encompassed by its claim under the Society Policy and (2) exceeds its $10,000 deductible under the West Bend Policy. West Bend is entitled to summary judgment on Yogeshwar's breach of contract claim.[31]

## VI.    CONCLUSION

For the reasons set forth herein:

1.      Society's motion (Doc. 42) for summary judgment is **granted in part and denied in part**. It is **granted** as to Yogeshwar's claims of bad faith, fraud and tortious interference with contract. Those claims are therefore dismissed. The motion is **denied** as to Yogeshwar's breach of contract claim.

2.      West Bend's motion (Doc. 43) for summary judgment is **granted** as to Yogeshwar's breach of contract claim, which is therefore dismissed. Because Yogeshwar has withdrawn its bad faith claim against West Bend, that claim is also dismissed. As such, no claims against West Bend remain pending in this case.

3.      Yogeshwar's motion (Doc. 44) for partial summary judgment is **denied**.

4.      This case shall proceed to trial only on Yogeshwar's breach of contract claim against Society.

---

[31] Because West Bend is entitled to summary judgment based on the merits of Yogeshwar's breach of contract claim, I find no need to address its alternative arguments concerning the West Bend Policy's concealment, misrepresentation or fraud provision.

41

**IT IS SO ORDERED** this 9th day of July, 2024.

_____
Leonard T. Strand
United States District Judge